GERTRUDE H. HARDIN *et al. v.* CHARLES B. SHEDD,

and

FRANKLIN A. CLEAVELAND *et al. v.* CHARLES B. SHEDD.

*Opinion filed December 21, 1898.*

1. PRACTICE—*upon remandment questions already determined cannot be re-tried.* Upon remandment of a cause, additional testimony is not admissible which will open up a question already tried and determined upon the appeal.

2. SAME—*when a case need not be re-opened for further pleadings and proof upon remandment.* A party to a proceeding under the Burnt Records act, who has been adjudged by the Supreme Court to have no title to the shore of a lake under the survey relied upon, is not entitled, upon remandment, to have the case re-opened for further pleadings and proof upon the question of accretions and relictions occasioned by the recession of the waters of the lake.

3. APPEALS AND ERRORS—*one cannot complain of error not affecting his rights.* A party to a burnt records proceeding, who has been adjudged by the Supreme Court to have no interest in the lands in question, cannot complain that the decree entered upon remandment improperly fixes the boundary lines of the successful party.

4. For a discussion of the question of riparian rights, determined in this case upon former appeal, see *Fuller v. Shedd,* 161 Ill. 462.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

DENT & WHITMAN, and MORAN, KRAUS & MAYER, for appellants Gertrude H. Hardin *et al.*:

The respective patentees and their assigns had riparian rights incident to the grants, not only to the relictions which occurred after platting and before sale by the government, but also those afterwards occurring. *Banks v. Ogden,* 2 Wall. 57; *Lovingston v. St. Clair County,* 64 Ill. 56; *County of St. Clair v. Lovingston,* 23 Wall. 46.

Such riparian right embraced such special interest as each proprietor had in the waters, and all rights of user not inconsistent with the general rights of the public in respect to the waters. *Chicago v. Laflin,* 49 Ill. 172; *Yates v. Milwaukee,* 10 Wis. 497; *Boston v. Richardson,* 105 Mass. 351; *Dutton v. Strong,* 1 Black, 23.

No change which has taken place since the survey of 1834 should have been allowed to enlarge one grant at the expense of any other. *Jones* v. *Lee,* 77 Mich. 35.

S. P. DOUTHART, and S. P. SHOPE, for appellants Franklin A. Cleaveland *et al.*

H. S. MECARTNEY, and WILLIAM PRESCOTT, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a consolidation of several bills in equity under the Burnt Records act, filed in the circuit court of Cook county. From a decree rendered in that court an appeal was prosecuted to this, and the decree below in part affirmed and in part reversed, the cause being remanded for further proceedings in conformity with the opinion filed therein. For a statement of the pleadings and evidence in the case and the opinion then rendered, see *Fuller* v. *Shedd,* 161 Ill. 462.

Upon the cause coming on to be heard after the remandment to the circuit court, defendant and cross-complainant Gertrude H. Hardin filed her motion in writing for leave to introduce further testimony. This motion set up that since the entry of the original decree a trial had been had in a suit in ejectment by her against one Conrad N. Jordan, in the United States Circuit Court for the Northern District of Illinois, in which it was found by that court that she was seized in fee simple of certain lands claimed by her in her cross-petition in this cause, and was entitled to recover such lands to the center of Wolf Lake. The motion also suggested that the testimony taken at the original hearing, before appeal to this court, had not been directed especially to the question of the extent of accretions or relictions, but more especially pertained to the questions raised by persons claiming under the survey of 1874, which this court held to be void, and offered to show by surveys and field notes the

nature of the accretions and relictions, and that the lake or lakes have but little likelihood of permanence unless artificially sustained or protected. Appellants Cleaveland and Rushmore at the same time filed a petition asking leave to file a supplemental answer. The petition recited that since the trial of the cause which resulted in the decree of August 10, 1892, the waters of Hyde Lake had, because of the deepening and widening of the Calumet river, all disappeared, and the land formerly covered by that lake was now dry ground.

The chancellor denied the motion of Gertrude H. Hardin and also the petitions of Cleaveland and Rushmore. Thereupon a decree was entered, which, among other things, recited that "the recession was such that between the meandered lines and the water there was uncovered, and the greater part of the year was dry land around the lake, a strip twenty to twenty-five rods wide, and the marshy depression between the two ridges of land above described has become permanent dry land, the width thereof at the date of the former decree varying from at least thirty-six rods to seventy rods; that said permanent land thus accruing became attached to 'the said ridges of land as accretions and by reason of such recessions of the waters." Thereupon it was "decreed that said Charles B. Shedd should have and recover from each, all and every person and persons in possession of or claiming any right, title or interest in or to the same, or to any part thereof, the possession of the fractional south-west quarter of fractional section 20, and the fractional section 29, all in township 37, north of range 15, east of the third principal meridian, and the lands particularly described as follows, to-wit: Beginning at the north-east corner of said fractional south-west quarter of said fractional section 20, township 37 north, range 15, east of the third principal meridian; running thence south along the east line of said south-west fractional quarter of said fractional section 20 (and the extension

thereof to the south) to the open waters of Wolf Lake; thence along with the open waters of Wolf Lake in a southerly or south-westerly direction to the south line (extended to the east) of the said fractional section 29; thence west along said line as extended, and said south line of said section 29, to the north and south section line between sections 29 and 30 of said township and range; thence north along the line between said sections 29 and 30, and its extension to the north to a point identical with the north-west corner of the south-west quarter of said section 29, if said section were fully squared out and all its lines extended; thence from said point north-westerly to the waters of Hyde Lake, along a line drawn at an angle of 40 degrees with a line drawn due east and west through or at said point; thence along with the waters of Hyde Lake in a northerly or north-easterly direction to the center east and west line (extended to the west) of section 20; thence east along said line as extended and along said line to the place of beginning, together with all and singular the riparian rights and privileges and benefits incident to the position and location of said de- scribed tract or tracts of land, with reference to the lakes as aforesaid," etc.

The first question presented for our decision is, whether the court below erred in refusing to open up the case for further pleadings and proofs. Adhering, as we do, to the conclusion reached upon the former appeal as to the invalidity of the survey of 1874, it must follow that the court properly refused the petition of appellants Cleave- land and Rushmore. The validity of the survey under which they claimed depended, not upon the conditions at the time leave was asked to file an amended answer, but when the original survey was made. Whether the land formerly covered by the waters of Hyde Lake is now dry or still covered by water can make no difference to these appellants, so long as they are able to show no title to the shore.

We are also of the opinion that the motion of Mrs. Hardin for leave to introduce additional evidence was properly refused. The only objection to that ruling worthy of particular attention is, that the offered proof tended to show relictions and accretions in Hyde Lake since the case was originally tried. The evidence on the former hearing showed, and we so found on the former appeal, that from the meander line around the lake to the water's edge there was a recession of about twenty-five rods and that the depression between the two ridges was permanent dry land, our decision then being that the riparian owners took to the water's edge, their rights to accretions and relictions following the recession of the water. Hence to have admitted the offered evidence would have been to open up for re-trial a question already tried and determined, which, under the uniform decisions of this court, is not permissible. *Wadhams* v. *Gay*, 83 Ill. 250; *Hough* v. *Harvey*, 84 id. 308; *Newberry* v. *Blatchford*, 106 id. 584; *Washburn & Moen Manf. Co.* v. *Chicago Galvanized Wire Fence Co.* 119 id. 30; *Sanders* v. *Peck*, 131 id. 407; *West* v. *Douglas*, 145 id. 164.

On the question of the rights of riparian owners to accretions formed by the recession of waters of lakes like these, we do not consider it necessary to add anything to what we said on the former appeal. The able and earnest arguments of counsel to the contrary have received careful consideration, but have failed to convince us that the rule heretofore laid down is not the more practicable and just one.

Many objections are urged against the decree below as fixing the boundary lines of appellee, Shedd. Whether the decree gives him too much or too little of the land is not material in the decision of this case, there being no showing that the rights of appellants are thereby prejudiced. As to owners or claimants, if any, who have not had their day in court, the decree will, of course, have no binding force.

It is contended that, being the owner of the land abutting upon Hyde Lake on the west, appellant Hardin is entitled to all accretions formed on her shore line facing the east and directly in front of the open water between the two lakes at the time of the survey in 1834. This contention is, practically, that there is but one lake instead of two. We are unable to discover any reasonable theory upon which this claim can be sustained. Under the rule laid down in our former decision Mrs. Hardin can have no interest in the dry land formed between the south-west fractional section 20 and the south-west fractional section 29. At the time of the former hearing the waters had not receded to any considerable extent from the shore line. No matter how deep or shallow the waters were, she must claim whatever right she has, by reason of accretions to her lands. We cannot see how the ridge of dry land between the fractional quarter sections spoken of can, under these circumstances, be treated as an accretion to lands on the west bank of the lake. To do so would be, in effect, to hold that the entire lake bed is an accretion to such land.

We are also of the opinion that the objection to the decree on the ground that it does not fairly divide the accretions between fractional section 29 and the west fraction of the south-east fractional section 30 must be overruled. The plats, with distances, in evidence, show that the division is equitable and just. The decree proceeds upon the theory the ridge formed in a northerly direction from these fractional pieces of land is an accretion thereto, and it seeks to make an equitable partition thereof between the owners of such fraction. We are unable to see wherein the division is unfair to the parties.

On the whole record the decree of the circuit court appears to be in conformity with the directions given in our former opinion, and it will accordingly be affirmed.

*Decree affirmed.*